```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

**BRANDON C. LOGAN**

   **Plaintiff,**
 vs.            Civil Action 2:10-CV-110
                Judge Frost
                Magistrate Judge King
**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

   **Defendant.**

## REPORT AND RECOMMENDATION

  This is an action instituted under the provisions of 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors* and the Commissioner's *Memorandum in Opposition.*

  Plaintiff Brandon C. Logan filed his application for benefits in April 2007, alleging that he has been disabled since November 1, 2004 as a result of epilepsy and asthma. *A.R.* 109. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

  On February 11, 2009, plaintiff, represented by counsel, appeared and testified at a video hearing as did his friends Kevin and Charles Bailey and AnnMarie E. Cash, who testified as a vocational expert. In a decision dated March 31, 2009, the administrative law judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on December 10, 2009.

  Plaintiff was 22 years old at the time the administrative law judge issued her decision. He has a ninth grade education, *A.R.*

114, and prior relevant work experience as a fast food worker. *A.R.* 109-10.  He last worked in 2004.  *A.R.* 23.

The record establishes, and the administrative law judge found, that plaintiff suffers a seizure disorder. Plaintiff testified that he has no warning before seizures. *A.R.* 32. He has had as many as three or four seizures in one week; the longest period without a seizure has been three months.  *A.R.* 31.  "They can be up to . . . three or four in a week or I can go a month or two months without having one."  *A.R.* 33. In May 2008, he had two different episodes of back-to-back seizures in one month.  *A.R.* 30. After a seizure, he is extremely tired and usually sleeps for an hour or so. He has no memory from shortly before the seizure until after the seizure. *A.R.* 26.

Kevin and Charles Bailey, friends of plaintiff, testified that they have observed plaintiff's seizures. *A.R.* 34-38; 38-41. They both specifically referred to an incident when plaintiff experienced back-to-back seizures while fishing.  *A.R.* 36, 41. Kevin Bailey also testified that he observed two different episodes "within the same two months."  *A.R.* 37.

Because of his seizure disorder, plaintiff avoids using computer screens; he does not play video games. He usually goes to bed between 9:00 p.m. or 10:00 p.m.  *A.R.* 25. Physical over-exertion has precipitated seizures in the past. *Id.*

Plaintiff testified that he can fix a meal for himself and is able to do household chores.  *A.R.* 29. He cannot drive because of the disorder. He has gone deer hunting and fishing. *A.R.* 28-29. He can lift 20 to 30 pounds. *A.R.* 28.

Plaintiff has treated with Brooke M. Park, C.N.P., for a number of years.  In April 2007, plaintiff reported to Nurse Practitioner Park that he had recently experienced a number of seizures after having gone one year without a seizure.  *A.R.* 145. Nurse Practitioner Park referred plaintiff to a neurologist. *Id.*

2

Since that time, plaintiff's epilepsy has been treated by Michael E. Jones, D.O., by Sudhin Kanabar, M.D., and by Robert Lewis II, M.D.

In May 2007, plaintiff reported to Dr. Jones that he had recently experienced two seizures after having gone approximately nine months without any seizure activity. Dr. Jones noted that plaintiff's seizures occurred without warning and involved vision difficulty, dizziness, weakness, clumsiness, seizures, falls, back pain, memory loss, and confusion. Dr. Jones diagnosed a primary generalized epilepsy and he modified plaintiff's medications. *A.R.* 176-78.  A June 2007 EEG on June 27, 2007 was consistent with primary generalized epilepsy. *A.R.* 158. An MRI of the brain did not reveal an acute process. *A.R.* 174. Dr. Jones continued to adjust plaintiff's medications.  *A.R.* 174-75.

In June 2007, a state agency physician reviewed the record, but it appears that this physician referred only to the April 2007 office visit to plaintiff's nurse practitioner: "Office visit 4-25-2007: seizure free for one year prior to recent seizure episodes. . . .  Condition does not meet or equal. . . ." *A.R.* 168.  The physician opined that plaintiff's noncompliance with medication contributed to his recent seizure breakthrough. *A.R.* 165. Noting that the record contained "no new medical,"  another state agency physician affirmed this  assessment in October 2007. *A.R.* 180.

In August 2007, Dr. Jones noted that, with the changes in plaintiff's medications, his epilepsy appeared to be well controlled.  *A.R.* 172-73.  At a March 2008 visit, plaintiff reported that his last seizure had been in November 2007.  *A.R.* 191-92. In April 2008, plaintiff reported that he had just experienced two seizures after suffering a personal loss. Because the seizures occurred in association with a traumatic event, which suggested possible non-epileptic seizures in addition to true

epileptic seizures, Dr. Jones maintained plaintiff's medication regimen. *A.R.* 187-90.

In May 2008, plaintiff reported to Dr. Kanabar that he had experienced four seizures within the last month after a change in his medication. According to plaintiff, during a seizure, his eyes roll back, he often bites his tongue, he sometimes experiences urinary incontinence, and he has tonic stiffening followed by generalized jerking. Dr. Kanabar adjusted plaintiff's medication. *A.R.* 203-04.  A May 2008 MRI of the brain was suggestive of a longstanding history of epilepsy. *A.R.* 201-02. On June 26, 2008, Dr. Kanabar reported that plaintiff was tolerating his anti-epileptic medications and had not had any obvious seizures. *A.R.* 194-96.

In October 2008, plaintiff reported to Dr. Lewis that he had experienced two seizures in a row. Noting that plaintiff was on 3 anti-epileptic drugs, Dr. Lewis opined that the chances of controlling plaintiff's epilepsy with medications were less than 10%. Dr. Lewis recommended surgery. *A.R.* 213-16. An October 2008 EEG was suggestive of a generalized epilepsy. *A.R.* 207. Dr. Lewis saw plaintiff again on November 6, 2008. Plaintiff reported he had not had any seizures since his last visit. Dr. Lewis noted that, although generalized epilepsy can usually be controlled with medications, the condition can be intractable. According to Dr. Lewis, plaintiff was doing well. He made no changes to plaintiff's medication at that time. *A.R.* 209-12.  Dr. Lewis also indicated that plaintiff's seizures are unpredictable and potentially dangerous. Recovery time after a seizure ranges from several minutes to hours. *A.R.* 217.

At the administrative hearing, the administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile and a residual functional capacity to perform work at all exertional levels, but which does not

involve hazardous machinery or unprotected heights, climbing ladders, working on vibrating surfaces, or excessive temperatures. In response, the vocational expert testified that such a claimant could perform plaintiff's past relevant work and approximately 21,000 light to medium, unskilled jobs in the regional economy. The vocational expert also testified that, if a claimant were off task thirty to forty percent of any work day following a seizure, the individual could not work.  The vocational expert testified that her testimony was consistent with the *Dictionary of Occupational Titles*. *A.R.* 42-45.

In her decision, the administrative law judge relied on the state agency physicians to conclude that plaintiff's severe impairments, including epilepsy, are not "reflective of listing level severity."  *A.R.* 11. However, the administrative law judge did not expressly consider the requirements of Listing 11.02, which addresses convulsive epilepsy;[1] she stated merely that "none of the claimant's treating or examining physicians of record has reported any of the necessary clinical, laboratory or radiographic findings specified therein."  *Id.*

The administrative law judge found that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with nonexertional limitations. He cannot climb ladders, ropes or scaffolds, or work around hazards/hazardous machinery, at unprotected heights, or on vibrating surfaces. He must avoid extremely hot temperatures, and he cannot work with computer screens. Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff is able

---

[1] *Epilepsy – convulsive epilepsy, (grant mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.*  With:
   A. Daytime episodes (loss of consciousness and convulsive seizures) or
   B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

Listing 11.02.

to perform his past relevant work as a fast food worker. In addition, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 9-16.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff contends that his seizure disorder meets Listing 11.02, that the administrative law judge failed to properly evaluate Dr. Lewis' report and failed to properly assess his credibility. Because this Court concludes that the administrative law judge's finding regarding Listing 11.02 is

6

not supported by substantial evidence, the Court also concludes that the matter must be remanded for further consideration.[2]

As noted *supra*, the administrative law judge relied on the opinions of the state agency physicians in finding that plaintiff's seizure disorder was not of listing level severity. *A.R.* 11-12. However, those opinions appear to have been based on only the April 2007 report of plaintiff's visit to his treating nurse practitioner. There is no indication in the record that any qualified medical expert has ever considered this issue in light of all the medical evidence, including the reports of plaintiff's treating neurologists. Moreover, the administrative law judge herself gave only cursory attention to the issue and this Court is unable to conclude that her analysis in this regard is supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that the matter be **REMANDED** for further consideration of whether plaintiff's seizure disorder meets or equals a listed impairment.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen(14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report*

---

[2]Under these circumstances, the Court need not and does not address plaintiff's remaining claims.

and Recommendation. See *Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 18 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

            <u>s/Norah McCann King</u>
             Norah McCann King
          United States Magistrate Judge

January 24, 2011